**BERNSTEIN LITOWITZ BERGER**
**    & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:    (310) 819-3470

        -and-

HANNAH ROSS
(hannah@blbglaw.com)
AVI JOSEFSON
(avi@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel:    (212) 554-1400
Fax:    (212) 554-1444

*Counsel for Plaintiff City of Hallandale Beach*
*Police Officers' and Firefighters' Personnel*
*Retirement Trust*

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF HALLANDALE BEACH POLICE OFFICERS' AND FIREFIGHTERS' PERSONNEL RETIREMENT TRUST, on behalf of itself and all others similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>INTEL CORPORATION, ROBERT H. SWAN, GEORGE S. DAVIS, and VENKATA S.M. RENDUCHINTALA,<br><br>                Defendants. | Case No. 3:20-cv-06493<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>DEMAND FOR JURY TRIAL |

Plaintiff City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of: (i) regulatory filings made by Intel Corporation ("Intel" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases, presentations, and media reports issued by and disseminated by the Company; (iii) analyst and media reports concerning Intel; and (iv) other public information regarding the Company.

I.   **INTRODUCTION**

1.    This securities class action is brought on behalf of all persons or entities that purchased or otherwise acquired shares of Intel common stock between October 25, 2019 and July 23, 2020, inclusive (the "Class Period").  The claims asserted herein are alleged against Intel and certain of the Company's current and former senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

2.    Intel designs and manufactures microprocessors and other semiconductor components that are used in computers, data centers, communications infrastructure, and other devices.  This matter arises from Defendants' repeated misrepresentations to investors regarding Intel's development and manufacturing of a new, seven-nanometer chip.

3.    New manufacturing processes in the semiconductor industry are measured by nanometers or "nm"—referring to the size of the transistors on the chips used to make calculations. The smaller the transistors, the more processing power that can be included in a chip's finite space. These technological advancements help companies make semiconductors that have smaller circuits, which allows the components to count faster, store more information or use less electricity.

4.    Intel is unique among semiconductor companies because it designs and produces its products in its own manufacturing facilities, while most of its competitors, including Advanced Micro Devices, Inc. ("AMD"), focus on design and rely upon third-party foundries, such as Taiwan

Semiconductor Manufacturing Co. ("TSMC"), to manufacture their chips.  The ability to focus solely on production has helped TSMC improve its manufacturing capabilities faster than Intel and has given companies such as AMD an opportunity to compete with Intel.

5.     Prior to the start of the Class Period, Intel repeatedly delayed the launch of its 10-nanometer chips due to flaws in Intel's manufacturing process.  Those delays tarnished Intel's reputation as a premier semiconductor chip maker and allowed the Company's competitors to bring more advanced technology to market.

6.     In April 2018, to address Intel's flawed execution in the development and production of its 10-nanometer chips, the Company hired Jim Keller ("Keller"), one of the industry's most highly respected chip architects, as a Senior Vice President who would lead Intel's chip engineering efforts.  Accordingly, by the start of the Class Period, Intel purported to have positioned itself to promptly and successfully produce its next generation seven-nanometer chip, which was scheduled to debut in late 2021.  The timely development and production of the seven-nanometer chip was critically important to the Company and its investors.

7.     Throughout the Class Period, the Company repeatedly assured investors that it was making "good progress" on its seven-nanometer chip and that Intel's first seven-nanometer product was "on track" to launch by late 2021.  Intel also touted its "in-house manufacturing as an important advantage" over its competitors.  These and similar statements made throughout the Class Period were false.  In reality, Defendants knew, or recklessly disregarded, that as a result of a material defect in Intel's manufacturing process, the Company could not launch its next generation seven-nanometer chip on schedule.  As a result of the Company's defective manufacturing process, Defendants also knew or recklessly disregarded that Intel's strategy of designing and manufacturing its products in-house did not provide the competitive advantage touted to investors.  As a result of Defendants' misrepresentations, shares of Intel common stock traded at artificially inflated prices during the Class Period.

8.     The truth began to emerge on June 11, 2020, when Intel announced that Keller had abruptly resigned, effective immediately.  The Company also revealed significant leadership changes within its Technology, Systems Architecture and Client Group—the group responsible

for engineering and manufacturing Intel's chips.  As a result of these disclosures, the Company's stock price declined by $4.17 per share, or 6.5%, from $63.87 per share to $59.70 per share.

9.　Then, on July 23, 2020, after the market closed, Intel shocked investors when it revealed that production of its seven-nanometer chips was 12 months behind schedule.  The Company attributed the delay to a "defect" in Intel's seven-nanometer manufacturing process. Intel also revealed that, as a result of those production problems, it had established plans to outsource chip production to third-party manufacturers.  These disclosures caused the price of Intel stock to decline by $9.81 per share, or 16.2%, from $60.40 per share to $50.59 per share.

10.　On July 27, 2020—after the end of the Class Period—Intel announced additional sweeping changes to the Company's Technology, Systems Architecture and Client Group.  These changes included the ousting of the Company's Chief Engineering Officer, Defendant Venkata S.M. Renduchintala.

## II.　JURISDICTION AND VENUE

11.　The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.　Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Intel maintains its headquarters in Santa Clara, California, which is situated in this District, conducts substantial business in this District, and many of the acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were issued from this District.  In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.　PARTIES

13.　Plaintiff is a pension fund based in Hallandale Beach, Florida that provides

retirement benefits for retired police officers and firefighters.  As of September 30, 2019, Plaintiff managed assets of approximately $180 million on behalf of hundreds of active members, retirees, and beneficiaries.  As indicated in the certification submitted herewith, Plaintiff purchased shares of Intel common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

14.    Defendant Intel is a global technology company.  Incorporated in Delaware, the Company maintains its corporate headquarters at 2200 Mission College Boulevard, Santa Clara, California.  Intel common stock trades on NASDAQ under ticker symbol "INTC."  As of June 27, 2020, Intel had over 4.25 billion shares of common stock outstanding, owned by hundreds or thousands of investors.

15.    Defendant Robert H. Swan ("Swan") has served as Intel's Chief Executive Officer since January 30, 2019.

16.    Defendant George S. Davis ("Davis") has served as Intel's Chief Financial Officer since April 3, 2019.

17.    Defendant Venkata S.M. Renduchintala ("Renduchintala") served as Intel's Chief Engineering Officer and President of the Company's Technology, Systems Architecture and Client Group from April 12, 2017 until August 3, 2020.[1]

18.    Defendants Swan, Davis, and Renduchintala are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with Intel, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  Each of the Individual Defendants was provided with copies of the Company's reports, presentations, and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information

---

[1] In 2018, Intel's Client and Internet of Things Businesses and System Architecture Group evolved into the Technology, Systems Architecture and Client Group.

available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## IV.    BACKGROUND

19.    Based in Santa Clara, California, Intel designs and manufactures microprocessors and other semiconductor components that are used in computers, data centers, communications infrastructure, and other devices.

20.    Prior to the Class Period, Intel delayed the launch of its 10-nanometer chips multiple times, and by several years, as a result of flaws in the Company's manufacturing process. These delays damaged Intel's reputation and allowed the Company's competitors to capture market share from Intel by bringing more advanced technology to market.

21.    To address the Company's manufacturing issues, Intel hired Keller, one of the industry's most respected chip designers, in April 2018 to lead the Company's chip engineering.

22.    Given Intel's significant missteps in manufacturing its 10-nanometer chip, the Company's ability to successfully produce its next generation seven-nanometer chip on schedule was of critical importance to investors.  Accordingly, Intel assured investors that it would deliver its seven-nanometer technology in late 2021.

## V.    DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS

23.    The Class Period begins on October 25, 2019, the first trading day after Intel held its third quarter 2019 earnings call.  During the call, which began after the market closed on October 24, 2019, Defendant Swan stated that Intel was "accelerating the pace of process node introductions and moving back to a 2-to 2.5-year cadence" on its chip development and that the Company's "process technology and design engineering teams are working closely to ease process design complexity and balance schedule, performance, power and cost," assuring investors that "[w]e are on track to launch our first 7-nanometer-based product . . . in 2021, 2 years after the launch of 10-nanometer."  Defendant Swan also represented to investors that Intel could achieve

production of its seven-nanometer chip more quickly and efficiently than its 10-nanometer chip because "there's less complexity" in the design rules.

24.    On December 3, 2019, Defendant Swan represented Intel and presented at the Credit Suisse Technology, Media and Telecom Conference.  During the conference, an analyst questioned why Intel was so confident in getting back to a 2 to 2.5 year cadence in developing and producing its seven-nanometer chip, despite the challenges and delays the Company faced with its 10-nanometer chip.  In response, Defendant Swan stated that Intel had "learn[ed] from the past" and emphasized that "we didn't start [on seven-nanometer] yesterday.  We started it several years ago and we monitor performance on density, on functionality" and "we feel pretty good about getting to a 2, 2.5-year cadence and launching our first 7-nanometer product in the fourth quarter of 2021."

25.    On December 10, 2019, Defendant Renduchintala represented Intel during a presentation at the UBS Global TMT Conference.  During the conference, an analyst asked that "[g]iven the issues that you've had on 10, which have been quite public, can you talk about what you learned that might give us more confidence on 7?"  In response, Defendant Renduchintala stated that the Company had "learned a number of really, really crucial lessons" from the challenges it faced in the development and production of its 10-nanometer technology.  Defendant Renduchintala also emphasized that those lessons "have been integrated into our approach on 7" and assured investors that "we're making good progress on 7 as a result of that" and "we'll see our first 7-nanometer product shipping in 2021 with a full portfolio in 2022."

26.    On January 23, 2020, Intel held its fourth quarter and full fiscal year 2019 earnings call.  During the call, Defendant Swan stated that "[o]ur process technology execution continues to improve" and reassured investors that "[o]ur 7-nanometer process remains on track to deliver our lead 7-nanometer product, Ponte Vecchio, at the end of 2021."

27.    The next day, on January 24, 2020, Intel filed with the SEC its annual report on Form 10-K for the fourth quarter and full fiscal year 2019.  The Form 10-K was signed by Defendants Swan and Davis and contained certifications by Defendants Swan and Davis that attested to the purported accuracy and completeness of the Form 10-K.  In the 10-K, the Company

1    emphasized that, unlike many other semiconductor companies, Intel manufactures its products in

2    its own manufacturing facilities and touted its "in-house manufacturing as an important advantage"

3    over its competitors. The 10-K also stated that "[o]ur ability to optimize and apply our

4    manufacturing expertise to deliver more advanced, differentiated products is foundational to our

5    current and future success." In addition, the 10-K reassured investors that "[w]e are on track to

6    deliver our first 7nm-based product . . . at the end of 2021" and "[w]e are approaching next-

7    generation process nodes with a focus on striking an optimal balance between schedule,

8    performance, power, and cost and will continue to drive intra-node advancement."

9         28. The Company's 10-K acknowledged that most of Intel's competitors rely on third-

10   party foundries, such as TSMC, to manufacture their semiconductor components and products,

11   and represented that Intel faced purported risks with regard to its timely introduction of new

12   manufacturing technologies with sufficient manufacturing yields. Specifically, the 10-K stated

13   that "to the extent we do not timely introduce new manufacturing process technologies that

14   improve transistor density with sufficient manufacturing yields and operational efficiency, relative

15   to competing foundry processes, we can face cost and product performance disadvantages." The

16   10-K also purported to warn that "to the extent we face delays in the timing of our product

17   introductions, we could become less competitive and lose revenue opportunities, and our gross

18   margin could be adversely affected because we incur significant costs up front in the product

19   development stage and earn revenue to offset these costs over time."

20         29. On March 2, 2020, Defendant Davis represented Intel during a presentation at the

21   Morgan Stanley Technology, Media & Telecom Conference. During the conference, an analyst

22   questioned Intel's progress on its 10-nanometer and seven-nanometer process technology. In

23   response, Defendant Davis stated that despite the issues the Company faced in producing its 10-

24   nanometer chip, which he acknowledged would be "less productive" than earlier generations of

25   Intel's processors, "we expect to start the 7-nanometer period . . . with a much better profile of

26   performance over that starting at the end of '21." Defendant Davis further assured investors that

27   "we're starting to see the acceleration on the process side that we have been talking about to get

28   back to [competitive] parity in the 7-nanometer generation and regain leadership in the [product]."

30.     On April 23, 2020, Intel held its first quarter 2020 earnings call.  During the call, Defendant Swan stated that "in 2021, we'll be ramping 10-nanometer even more while we're investing in 7-nanometer that we anticipate having in the fourth quarter of 2021," assuring investors that Intel was "well on track from the plans we laid out."

31.     The next day, on April 24, 2020, Intel filed with the SEC its quarterly report on Form 10-Q for the first quarter 2020.  The Form 10-Q was signed by Defendant Davis and contained certifications by Defendants Swan and Davis that attested to the purported accuracy and completeness of the Form 10-Q.  The 10-Q incorporated by reference the risk factors stated in Intel's January 24, 2020 Form 10-K.

32.     The statements set forth above in ¶¶23-31 were materially false and misleading.  In truth, Defendants knew, or recklessly disregarded, that: (i) a material defect in Intel's seven-nanometer manufacturing process caused yield degradation—meaning that Intel is producing too many defective chips and cannot currently manufacture its seven-nanometer technology in an economically sustainable way; (ii) due to that manufacturing defect, Intel could not launch its seven-nanometer chips on schedule; (iii) as a result of the manufacturing problems, Intel had to develop a plan to outsource production of its seven-nanometer chips; and (iv) as a result of the foregoing, Defendants' positive statements about Intel's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis.  In addition, the ostensible risks the Company identified regarding Intel's timely introduction of new manufacturing technologies with sufficient manufacturing yields had already materialized at the time the statements were made.

## VI.     THE TRUTH EMERGES

33.     On June 11, 2020, Intel announced the abrupt resignation of Keller, effective immediately.  Intel also revealed significant leadership changes within its Technology, Systems Architecture and Client Group—the group responsible for engineering and manufacturing Intel's semiconductor chips, including its seven-nanometer technology.  As a result of these disclosures, Intel's stock price declined by $4.17 per share, or 6.5%, from $63.87 per share to $59.70 per share.

34.     Despite Keller's departure, Intel reassured investors that its chip engineering and

manufacturing group remained strong and that development of the seven-nanometer chip was on schedule.  Specifically, Intel's June 11, 2020 release announcing Keller's resignation touted the Company's "vastly experienced team of technical leaders within its Technology, Systems Architecture and Client Group (TSCG) under the leadership of Dr. Venkata (Murthy) Renduchintala, group president of TSCG and chief engineering officer."

35.     That same day, Defendants Swan and Davis met with analysts from Deutsche Bank and discussed, among other things, the Company's progress on its seven-nanometer transition. Deutsche Bank reported that, according to the Company, "[l]ooking forward to 7nm, [Intel]'s time-line remains unchanged with a late 2021 launch."

36.     The statements set forth above in ¶¶34-35 were materially false and misleading.  In truth, Defendants knew, or recklessly disregarded, that: (i) a material defect in Intel's seven-nanometer manufacturing process caused yield degradation—meaning that Intel is producing too many defective chips and cannot currently manufacture its seven-nanometer technology in an economically sustainable way; (ii) due to that manufacturing defect, Intel could not launch its seven-nanometer chips on schedule; (iii) as a result of the manufacturing problems, Intel had to develop a plan to outsource production of its seven-nanometer chips; and (iv) as a result of the foregoing, Defendants' positive statements about Intel's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis.

37.     Then, on July 23, 2020, after the market closed, Intel shocked investors when it revealed that production of its seven-nanometer chips was 12 months behind schedule.  The Company attributed the delay to "the yield of Intel's 7nm process, which, based on recent data, is now trending approximately twelve months behind the company's internal target."  Defendant Swan further reported that "[w]e have identified a defect mode in our 7-nanometer process that resulted in yield degradation."  In addition, Defendant Swan announced that, as a result of these production problems, Intel had established plans to outsource chip production, including its seven-nanometer products, to third-party manufacturers—a strategy Intel had long opposed, and which would erase one of the Company's purported competitive advantages.  As a result of these disclosures, Intel's stock price declined by $9.81 per share, or 16.2%, from $60.40 per share to

$50.59 per share.

38.    On July 27, 2020—after the end of the Class Period—Intel announced further changes to the Company's Technology, Systems Architecture and Client Group, including the departure of Intel's Chief Engineering Officer, Defendant Renduchintala, whom Intel touted as the enduring "leader" of the Company's chip engineering and manufacturing functions in the wake of Keller's resignation.

39.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

**VII.    LOSS CAUSATION**

40.    During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.   This artificially inflated the price of Intel common stock and operated as a fraud or deceit on the Class (as defined below).   Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Intel stock fell precipitously as the prior artificial inflation came out of the price over time.   As a result of their purchases of Intel common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

**VIII.    CLASS ACTION ALLEGATIONS**

41.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities that purchased or otherwise acquired the publicly traded common stock of Intel during the Class Period (the "Class").   Excluded from the Class are Defendants and their families, directors, and officers of Intel and their families and affiliates.

42.    The members of the Class are so numerous that joinder of all members is impracticable.   The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.   As of June 27, 2020, there were over 4.25 billion shares of Intel common stock outstanding, owned by hundreds or thousands of investors.

43.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)     Whether Defendants' conduct impacted the price of Intel common stock;

(g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)     The extent of damage sustained by Class members and the appropriate measure of damages.

44.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

45.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

46.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## IX.    INAPPLICABILITY OF STATUTORY SAFE HARBOR

47.     Intel's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

48.     Defendants are also liable for any false or misleading forward-looking statements

1   pleaded herein because, at the time each such statement was made, the speaker knew the statement
2   was false or misleading and the statement was authorized and/or approved by an executive officer
3   of Intel who knew that the statement was false.  None of the historic or present tense statements
4   made by Defendants were assumptions underlying or relating to any plan, projection, or statement
5   of future economic performance, as they were not stated to be such assumptions underlying or
6   relating to any projection or statement of future economic performance when made, nor were any
7   of the projections or forecasts made by Defendants expressly related to, or stated to be dependent
8   on, those historic or present tense statements when made.

9   **X.    PRESUMPTION OF RELIANCE**

10      49.    At all relevant times, the market for Intel common stock was an efficient market
11  for the following reasons, among others:

12          (a)    Intel common stock met the requirements for listing, and was listed and
13  actively traded on NASDAQ, a highly efficient and automated market;

14          (b)    As a regulated issuer, Intel filed periodic public reports with the SEC and
15  NASDAQ;

16          (c)    Intel regularly and publicly communicated with investors via established
17  market communication mechanisms, including through regular disseminations of press releases on
18  the national circuits of major newswire services and through other wide-ranging public disclosures,
19  such as communications with the financial press and other similar reporting services; and

20          (d)    Intel was followed by several securities analysts employed by major
21  brokerage firm(s) who wrote reports which were distributed to the sales force and certain
22  customers of their respective brokerage firm(s).  Each of these reports was publicly available and
23  entered the public marketplace.

24      50.    As a result of the foregoing, the market for Intel common stock promptly digested
25  current information regarding Intel from all publicly available sources and reflected such
26  information in the price of Intel common stock.  Under these circumstances, all purchasers of Intel
27  common stock during the Class Period suffered similar injury through their purchase of Intel
28  common stock at artificially inflated prices and the presumption of reliance applies.

51.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding Intel's business operations—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Company's ability to promptly and effectively produce its next generation seven-nanometer technology, that requirement is satisfied here.

## COUNT I

**For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Against All Defendants**

52.     Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

53.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Intel common stock at artificially inflated prices.

54.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Intel common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

55.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

56.     During the Class Period, Defendants made the false statements specified above,

which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

57.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Intel's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

58.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Intel common stock.  Plaintiff and the Class would not have purchased Intel common stock at the prices they paid, or at all, had they been aware that the market prices for Intel common stock had been artificially inflated by Defendants' fraudulent course of conduct.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

60.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act Against the Individual Defendants

61.     Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

62.     The Individual Defendants acted as controlling persons of Intel within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Intel, the Individual Defendants had the power and ability to control the actions of Intel and its employees.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

1    **XI.    PRAYER FOR RELIEF**

2        63.    WHEREFORE, Plaintiff prays for judgment as follows:

3            (a)    Determining that this action is a proper class action under Rule 23 of the

4    Federal Rules of Civil Procedure;

5            (b)    Awarding compensatory damages in favor of Plaintiff and other Class

6    members against all Defendants, jointly and severally, for all damages sustained as a result of

7    Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

8            (c)    Awarding Plaintiff and the Class their reasonable costs and expenses

9    incurred in this action, including attorneys' fees and expert fees; and

10            (d)    Awarding such equitable/injunctive or other further relief as the Court may

11    deem just and proper.

12    **XII.    JURY DEMAND**

13        64.    Plaintiff demands a trial by jury.

14

15    DATED: September 16, 2020                    Respectfully submitted,

16                                          **BERNSTEIN LITOWITZ BERGER**
                                              **& GROSSMANN LLP**

17                                          _/s/ Jonathan D. Uslaner_
18                                          JONATHAN D. USLANER (Bar No. 256898)
                                              (jonathanu@blbglaw.com)
19                                          2121 Avenue of the Stars, Suite 2575
                                              Los Angeles, CA 90067
20                                          Tel:    (310) 819-3470

21                                                    -and-

22                                          HANNAH ROSS
                                              (hannah@blbglaw.com)
23                                          AVI JOSEFSON
                                              (avi@blbglaw.com)
24                                          1251 Avenue of the Americas
                                              New York, NY 10020
25                                          Tel:    (212) 554-1400
                                              Fax:    (212) 554-1444
26
27                                          _Counsel for Plaintiff City of Hallandale Beach_
                                              _Police Officers' and Firefighters' Personnel_
                                              _Retirement Trust_
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KLAUSNER KAUFMAN JENSEN
& LEVINSON**
ROBERT D. KLAUSNER
(bob@robertdklausner.com)
STUART A. KAUFMAN
(stu@robertdklausner.com)
7080 NW 4th Street
Plantation, FL 33317
Tel:     (954) 916-1202
Fax:     (954) 916-1232

*Additional Counsel for Plaintiff City of
Hallandale Beach Police Officers' and
Firefighters' Personnel Retirement Trust*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Alan B. Miller, on behalf of City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust ("Hallandale Beach"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of Hallandale Beach.  I have reviewed the complaint with the Fund's legal counsel.  Based on the legal counsel's knowledge and advice, Hallandale Beach has authorized the filing of the complaint.

2. Hallandale Beach did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Hallandale Beach is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Hallandale Beach's transactions in the Intel Corporation securities that are the subject of this action are set forth in the chart attached hereto.

5. Hallandale Beach has sought to serve as a lead plaintiff and representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for lead plaintiff or was not appointed lead plaintiff:

*Indiana Public Retirement System v. Pluralsight, Inc.,* No. 19-cv-00128 (D. Utah)

6. Hallandale Beach has served as a representative party on behalf of a class in the following action filed under the federal securities laws during the three years preceding the date of this Certification:

*City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust v. AnaptysBio, Inc.,* No. 20-cv-00565 (S.D. Cal.)

7. Hallandale Beach will not accept any payment for serving as a representative party on behalf of the Class beyond Hallandale Beach's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___ day of September, 2020.

Alan B. Miller
Chairman
*City of Hallandale Beach Police Officers'*
*and Firefighters' Personnel Retirement Trust*

**City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust**
**Transactions in Intel Corporation**

| <u>Transaction</u> | <u>Date</u> | <u>Shares</u> | <u>Price</u> |
|---|---|---|---|
| Purchase | 10/28/2019 | 2,530 | 56.7152 |
| Purchase | 12/31/2019 | 2,810 | 59.7598 |
| Purchase | 1/24/2020 | 2,910 | 68.5574 |
| Purchase | 1/24/2020 | 3,795 | 68.5060 |
| Purchase | 1/24/2020 | 4,683 | 68.3892 |
| Purchase | 1/27/2020 | 903 | 66.2518 |
| Purchase | 2/4/2020 | 39 | 65.4800 |
| Purchase | 4/1/2020 | 547 | 52.7237 |
| Purchase | 4/1/2020 | 1,350 | 54.4624 |
| Purchase | 4/2/2020 | 528 | 52.6849 |
| Purchase | 4/6/2020 | 1,760 | 57.3902 |
| Purchase | 5/19/2020 | 665 | 61.1967 |
| Purchase | 5/20/2020 | 518 | 63.2478 |
| Purchase | 5/29/2020 | 532 | 62.6064 |
| Purchase | 6/2/2020 | 696 | 61.1557 |
| Sale | 1/3/2020 | (2,460) | 60.0687 |
| Sale | 4/28/2020 | (148) | 59.3000 |